UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

FREDERICK Q. HACKNEY,      )
                                )
        Plaintiff,        )
                                )
   vs.                  )      Case No. 4:22 CV 410 CDP
                                )
CITY OF ST. LOUIS, et al.,      )
                                )
        Defendants.     )

## MEMORANDUM AND ORDER

This 42 U.S.C. § 1983 case is currently before me on defendants' motions for judgment on the pleadings.  The City's motion is granted, as is defendant Glass's motion.  The motion filed by defendants Moss and Woods is granted in part and denied in part.

## Background Facts[1]

In February 2017, plaintiff was a pretrial detainee at the now-shuttered St. Louis Medium Security Institution (known colloquially as the Workhouse) pending trial on charges of possession of a firearm, resisting arrest, possession of a controlled substance, and unlawful use of a weapon.   Inmates at the Workhouse were housed

---

[1] The Court draws these facts from plaintiff's complaint.  ECF 2.  In so doing, the Court, as it must, liberally construes the complaint in favor of plaintiff and draws all reasonable inferences in his favor.  *Huggins v. FedEx Ground Package Sys., Inc.*, 592 F.3d 853, 862 (8th Cir. 2010); *Lustgraaf v. Behrens*, 619 F.3d 867, 872–73 (8th Cir. 2010); *Pederson v. Frost*, 951 F.3d 977, 979 (8th Cir. 2020).

dormitory style.  At the time of the events at issue here, there were over 400 inmates on the second floor where plaintiff was housed.  The second floor was monitored by only three correctional officers and one lieutenant.  Plaintiff reported to correctional officer Samella Moss that he was being threatened by younger inmates[2] because he was "older" and feared for his safety, so he requested a transfer to another dorm. Moss responded by issuing him a false conduct violation and sending him to administrative segregation for 10 days.

Upon release from administrative segregation, Hackney was reassigned to Dorm 8, which was an intensive segregation dorm for the most violent inmates.  He was immediately approached by three inmates known to have violently assaulted other inmates, who had weapons made from Workhouse fan blades and threatened to harm plaintiff if he did not request transfer to a different dorm.   Because plaintiff feared being sent to administrative segregation again, he did not request a transfer. Days later, on March 7, 2017, plaintiff was assaulted by these inmates with "homemade napalm," a heated mixture of water and baby oil, causing severe burns on plaintiff's head, ears, neck, shoulders, and back.  The napalm was made by the inmates using baby oil purchased at the commissary and heated in the microwave available for use by inmates.

---

[2] The younger inmates had gang affiliations and targeted older inmates like plaintiff who were unlikely to be gang members.

Correctional officer Angelica Woods witnessed the attack on plaintiff and did not intervene.  Woods also did not call for assistance from any other correctional officers until after the attack was over.  When officers eventually arrived, they rendered no medical assistance, nor did they call for emergency services or arrange for plaintiff to be taken to a hospital.  Instead, they handcuffed plaintiff, causing him severe pain, and eventually took him to the medical unit, where plaintiff was only given Tylenol and over-the-counter burn ointment for his injuries by a nurse despite the fact that he sustained first, second, and third degree burns on at least five percent of his body.  Plaintiff was then placed back in administrative segregation so he could not contact his family to inform them of the attack.  When the police were eventually called, Woods said she did not witness the attack.

Plaintiff was eventually seen by a Workhouse physician, who immediately transferred him to a hospital.  Plaintiff received inpatient treatment for his burns. When he was eventually returned to the Workhouse, the nurses failed to follow hospital instructions for the treatment of his burns.

As relevant here,[3] plaintiff's 130-page complaint asserts federal claims against the City, Dale Glass (the former Commissioner of the St. Louis City Division of Corrections), Moss, and Woods under 42 U.S.C. § 1983.  ECF 2.

---

[3] Plaintiff also sued Corizon Health, which provided medical care at the Workhouse, but I dismissed the claims against it by Memorandum and Order dated September 12, 2022.  ECF 23.

Plaintiff brings claims against the City for "pervasive risk of harm" (Count I), retaliation for exercising First Amendment rights (Count II), inadequate medical care (Count III), cruel and unusual punishment (Count IV), failure to train (Count V), failure to supervise (Count VI), and failure to protect (Count VII).

Plaintiff sues Glass for "pervasive risk of harm" (Count I), retaliation for exercising First Amendment rights (Count II), inadequate medical care (Count III), cruel and unusual punishment (Count IV), failure to train (Count V), failure to supervise (Count VI), and failure to protect (Count VII).  Against Moss, plaintiff asserts claims for "pervasive risk of harm" (Count I), retaliation for exercising First Amendment rights (Count II), and cruel and unusual punishment (Count IV). Finally, Plaintiff's claims against Woods include a claim for "pervasive risk of harm" (Count I), failure to protect (Count VII), and failure to intervene (Count VIII).

Because plaintiff is a pretrial detainee, he brings his claims (save Count II) under the Eighth and Fourteenth Amendments.  "Although the Eighth Amendment has no application until there has been a formal adjudication of guilt, the Fourteenth Amendment gives state pretrial detainees rights which are at least as great as the Eighth Amendment protections available to a convicted prisoner." *Walton v. Dawson*, 752 F.3d 1109, 1117 (8th Cir. 2014) (cleaned up).  The Constitution affords greater protection to a pretrial detainee compared to a

4

convicted inmate in the sense that "[d]ue process requires that a pretrial detainee not be punished." *Bell v. Wolfish,* 441 U.S. 520, 535 n. 16 (1979).

## Discussion

Defendants move for judgment on the pleadings under Fed. R. Civ. P. 12 (c); Rule 12 (c) motions are reviewed under the same standard applied to motions to dismiss under Fed. R. Civ. P. 12(b)(6). *Ashley County, Ark. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly,* 550 U.S. 544, 570 (2007)). This requirement of facial plausibility means the factual content of the plaintiff's allegations must "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Park Irmat Drug Corp. v. Express Scripts Holding Co.*, 911 F.3d 505, 512 (8th Cir. 2018) (cleaned up). "Determining whether a complaint states a plausible claim for relief will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (cleaned up). The Court must accept the plaintiff's factual allegations as true and draw all reasonable inferences in favor of the nonmoving party. *Lustgraaf v. Behrens*, 619 F.3d 867, 872-73 (8th Cir. 2010).

Although courts must accept all factual allegations as true, they are not bound to accept as true a legal conclusion couched as a factual allegation.

*Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 677-78.  And, "factual allegations must be enough to raise a right to relief above the speculative level."  *Torti v. Hoag,* 868 F.3d 666, 671 (8th Cir. 2017) (cleaned up).

To state a claim under § 1983, a plaintiff must allege (1) that the defendant acted under color of state law; and (2) that the alleged conduct deprived the plaintiff of a constitutionally protected federal right.  *Schmidt v. City of Bella Villa*, 557 F.3d 564, 571 (8th Cir. 2009).

<u>Municipal Liability Under *Monell*</u>

The City argues that plaintiff's claims against it should be dismissed for failure to adequately plead municipal liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978).  In *Monell*, the United States Supreme Court held that a municipality (or other local government unit) can be liable under 42 U.S.C. § 1983 if an "action pursuant to official municipal policy of some nature caused a constitutional tort."  *Id.* at 691.  To prevail on a claim alleged against the City, plaintiff must show that the constitutional violation resulted from (1) an official "policy," (2) an unofficial "custom," or (3) a deliberately indifferent failure to train or supervise.  *Corwin v. City of Independence, Mo.*, 829 F.3d 695, 699 (8th Cir. 2016).  A plaintiff does not need to specifically plead the existence of an unconstitutional policy or custom.  *See Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004).  However, at a minimum, the complaint

6

must allege facts supporting the proposition that an unconstitutional policy or custom exists.  *Doe ex rel. Doe v. Sch. Dist. of City of Norfolk*, 340 F.3d 605, 614 (8th Cir. 2003).

Plaintiff alleges the City is liable under *Monell* for unconstitutional policies, customs, and/or failures to train/supervise.  For the following reasons, plaintiff has failed to adequately plead municipal liability for his alleged constitutional violations, so the claims against the City are dismissed.

*Official Policy*

"Official policy involves 'a deliberate choice to follow a course of action . . . made from among various alternatives' by an official who has the final authority to establish governmental policy."  *Jane Doe A By & Through Jane Doe B v. Special Sch. Dist. of St. Louis Cnty.*, 901 F.2d 642, 645 (8th Cir. 1990) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986)).

Plaintiff fails to plead facts identifying an official policy, such as a policy statement, local ordinance, regulation, or decision officially promulgated by the City, which caused the alleged deprivation of his constitutional rights.  *See Monell*, 436 at 690.[4]   Although plaintiff alleges that that the City had "no and/or inadequate policies" with respect to numerous issues, the failure to adopt a policy is only

---

[4] To the contrary, the complaint actually pleads the opposite – that the City had policies in place to protect inmates from physical abuse by other inmates, provide medical treatment to inmates, and to prohibit retaliation by staff.

7

actionable under *Monell* where it evidences a "conscious choice" by policymakers. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (U.S. 1989). To demonstrate a lack of policy was a conscious choice by policymakers, a plaintiff must show that the City's failure to adopt such a policy "was the product of deliberate indifference to the constitutional rights" of inmates. *Szabla v. City of Brooklyn Park*, *Minn.*, 486 F.3d 385, 390 (8th Cir. 2007). Deliberate indifference occurs when the City's policymakers "had notice that its procedures were inadequate and likely to result in a violation of constitutional rights." *Larson by Larson v. Miller*, 76 F.3d 1446, 1454 (8th Cir. 1996) (cleaned up).

Plaintiff fails to point to any well-pleaded facts that would put the City's policymakers on notice prior to the incidents complained of by plaintiff that its lack of official policies were likely to result in a violation of constitutional rights in the manner alleged by plaintiff, or that the City's policymakers has such notice but consciously decided not to act. *See Andrews v. Fowler*, 98 F.3d 1069, 1074-75 (8th Cir. 1996) (city may be subject to § 1983 liability only if it had a policy or custom of failing to act upon prior similar complaints of unconstitutional conduct).

To the extent that plaintiff attempts to plead a policy claim against the City by alleging that Glass was "a" policymaker for the Workhouse and he had "policymaking authority" over the allegedly unconstitutional customs or policies that resulted in the violation of his rights, the claim fails because plaintiff stops short of

alleging that either that Glass was either the final policymaker or that he actually implemented the policies at issue.

Finally, plaintiff fails to allege any well-pleaded facts to demonstrate that an official policy or lack thereof was the moving force behind his constitutional injury. As such plaintiff fails to state a claim that the City is liable for any alleged constitutional violations based upon official City policy.

*Unofficial Custom*

Alternatively, a plaintiff may establish municipal liability through an unofficial custom of the municipality by demonstrating "(1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and (3) that plaintiff was injured by acts pursuant to the governmental entity's custom, *i.e.*, that the custom was a moving force behind the constitutional violation." *Malone v. Hinman*, 847 F.3d 949, 955 (8th Cir. 2017) (cleaned up).   A municipality may not be held liable on the basis of custom unless there is "a pattern of persistent and widespread unconstitutional practices which became so permanent and well settled as to have the effect and force of law." *Jane Doe A By & Through Jane Doe B*, 901 F.2d at 646 (cleaned up).

To support his custom claim against the City, plaintiff relies primarily on outside sources regarding the conditions at the Workhouse, including an ACLU report, another lawsuit filed in this Court,[5] grand jury findings, task force recommendations, news stories, and statements made by the Mayor of St. Louis. These same general allegations have been considered and rejected as a basis for establishing municipal liability against the City.  *See Pope v. Barringer*, Cause No. 4:22CV544 CDP, 2023 WL 2139276, at *3–*4 (E.D. Mo., Feb. 21, 2023); *McKinley v. Perkins*, Cause No. 4:21CV1015 HEA, 2022 WL 2663739, at *5–*7 (E.D. Mo., July 11, 2022).  The Court reaches the same conclusion here, as there are no well-pleaded facts that any of the City's alleged customs and/or policies were the moving force behind any constitutional violation committed in this case.  Moreover, all of these sources (except the ACLU report) are all dated well *after* plaintiff's detention at the Workhouse[6] and therefore cannot reasonably be relied upon as evidence here that the City had notice of, but was either deliberately indifferent to or tacitly authorized, the type of conduct which later injured plaintiff.  As such, plaintiff has failed to allege any "direct causal link between these municipal policies and customs and the alleged constitutional deprivation."  *Harris*, 489 U.S. at 385 (cleaned up).

---

[5] That lawsuit is *Cody v. City of St. Louis*, Cause Number 4:17CV2707 AGF, and it was filed in November of 2017 (eight months after the events at issue here took place).

[6] In addition, the task force recommendations cited by plaintiff refer to another of the City's detention centers.

This is a rigorous standard of causation.  *Bd. of Cnty. Commissoners of Bryan Cnty., Okl. v. Brown*, 520 U.S.397, 405 (1997).

Plaintiff's general allegations of correctional office use of corporal punishment as a means of disciplining inmates and gladiator-style fighting amongst inmates do not state a custom claim against the City as such are allegations of misconduct unrelated to the facts at issue in *this* case.  *See Fowler*, 98 F.3d at 1075.  Plaintiff also alleges upon "information and belief" that there were other "napalm attacks" in other institutions and that other inmates had been threatened with weapons devised from Workhouse fan blades.  These conclusory allegations (even if credited) are insufficient to form the basis for municipal liability based upon custom as they do not demonstrate a "continuing, widespread" pattern of unconstitutional misconduct. Isolated incidents of misconduct or violence are insufficient to establish such a pattern.  *See Thelma D. By and Through Delores A. v. Bd. of Educ. of City of St. Louis*, 934 F.2d 929, 933 (8th Cir. 1991).

Nor do allegations that the Workhouse failed to comply with standards set by the American Correctional Association or the City's own safety policies and procedures demonstrate a "deliberate difference" sufficient to establish municipal liability, as "violations of prison policy or regulations alone are not enough to establish deliberate indifference" under § 1983 law.  *Vandevender v. Sass*, 970 F.3d 972, 978 (8th Cir. 2020); *Jackson v. Gutzmer*, 866 F.3d 969, 977 (8th Cir. 2017)

11

(corrections policy not constitutionally significant for purposes of evaluating § 1983 claim); *Sellers ex rel. Sellers v. Baer*, 28 F.3d 895, 902 (8th Cir. 1994).

For these reasons, plaintiff fails to state a claim that the City is liable for any alleged constitutional violations based upon unofficial City custom.

*Failure to Train/Supervise*

A municipal-liability claim based on a theory of inadequate training or supervision is simply an extension of a claim based on a "policy" or "custom" theory of municipal liability.  *Marsh v. Phelps Cnty.*, 902 F.3d 745, 751 (8th Cir. 2018). Although the City may be held liable if the "failure to properly supervise and train the offending employee caused a deprivation of constitutional rights," *Tlamka v. Serrell*, 244 F.3d 628, 635 (8th Cir. 2001) (cleaned up), failure to train is the "most tenuous" *Monell* theory.  *Connick v. Thompson*, 563 U.S. 51, 61 (2011).  That is because "[i]n virtually every instance where a person has allegedly had his or her constitutional rights violated by a city employee, a § 1983 plaintiff will be able to point to something the city could have done to prevent the unfortunate incident." *Mendoza v. United States Immigration & Customs Enforcement*, 849 F.3d 408, 420 (8th Cir. 2017) (cleaned up).

To state a viable § 1983 claim against the City for its alleged failure to adequately supervise and train its employees, plaintiff must allege facts sufficient to show that (1) "the City's officer-training programs were inadequate; (2) the City was

deliberately indifferent to the rights of others in adopting these training practices, and the City's failure to train was a result of deliberate and conscious choices it made; and (3) the City's alleged training deficiencies caused plaintiff's constitutional deprivation." *Ulrich v. Pope Cnty.*, 715 F.3d 1054, 1061 (8th Cir. 2013) (cleaned up). "A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." *Connick*, 563 U.S. at 62 (cleaned up). The issue is where, "in light of the duties assigned to specific officers or employees the need for more or different training or supervision is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *S.M. v. Lincoln Cnty.*, 874 F.3d 581, 585 (8th Cir. 2017).

Plaintiff alleges, in conclusory fashion, that the City failed to train and supervise its correctional officers. However, the complaint fails to allege with specificity the need for more or different training or supervision that is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of City can reasonably be said to have been deliberately indifferent to the need. In fact, Plaintiff makes no specific allegations with respect to the training or supervision of any specific correctional officer (including Moss and Woods) at all. With respect to training, plaintiff fails to allege a "pattern of similar constitutional

13

violations by untrained employees," and even fails to allege that Moss or Woods were untrained.

Thus, plaintiff's allegations are insufficient to show that the City was deliberately indifferent to the rights of Workhouse inmates in adopting its training practices, that the City's failure to train was a result of deliberate and conscious choices it made, or that these deficiencies caused plaintiff's attack. "That a plaintiff has suffered a deprivation of federal rights at the hands of a municipal employee will not alone permit an inference of municipal culpability and causation; the plaintiff will simply have shown that the *employee* acted culpably." *Brown*, 520 U.S. at 406-07. Plaintiff pleads no facts from which the Court can infer a direct causal link, resorting instead to mere conclusory allegations about the conditions at the Workhouse, which do not satisfy this burden. As such, plaintiff has failed to state a claim of municipal liability based on any custom or policy.

Because plaintiff has failed to allege any well-pleaded facts showing the existence of any custom, policy, or practice of the City to violate the constitutional rights of pretrial detainees at the Workhouse, or that the City caused the alleged constitutional violations at issue, I will dismiss plaintiff's claims against the City.

Official Capacity Claims against Glass, Moss, and Woods

Plaintiff concedes that his official capacity claims against the individual defendants are duplicative of his claims against the City and should therefore be

dismissed.  ECF 81 at 14.  Accordingly, all claims asserted against the individuals in their official capacities are dismissed.

Count I ("Pervasive Risk of Harm" Against All Defendants)

Count I will be dismissed because "pervasive risk of harm" is not a freestanding, independent cause of action under §1983, but is instead an element of his failure to protect claim asserted in Count VII. As such, Count I fails to state a claim under § 1983, and should be dismissed as to all remaining defendants.  Plaintiff acknowledges as much but then asks the Court to "subsume" his failure to protect claim asserted in Count I into Count VII.  The Court cannot do this, as "a claim either is cognizable under § 1983 or is not cognizable and should be dismissed." *Edwards v. Balisok*, 520 U.S. 641, 649 (1997) (cleaned up).  Moreover, Moss is not named in Count VII, and the Court will not create a cause of action against Moss where none is properly stated.  Count I is dismissed.

Individual Capacity Claims Against Glass (Counts II-VII)

Glass argues that all claims against him should be dismissed because the complaint fails to plausibly allege that he was personally involved in violating plaintiff's rights.   A plaintiff pursuing a claim against individuals under §1983 must "allege facts supporting any individual defendant's personal involvement or responsibility for the violations" alleged.  *Ellis v. Norris,* 179 F.3d 1078, 1079 (8th Cir. 1999).  "To establish personal liability of the supervisory defendants, plaintiff

must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of his constitutional rights." *Clemmons v. Armontrout*, 477 F.3d 962, 967 (8th Cir. 2007) (cleaned up).

"Respondeat superior is not applicable to § 1983 claims." *Ouzts v. Cummins*, 825 F.2d 1276, 1277 (8th Cir. 1987). Thus, for example, "a warden's general responsibility for supervising the operations of a prison is insufficient to establish personal involvement," which is required to state a § 1983 claim against an individual defendant. *Id.* However, the supervisory employee "might be liable if he had made policy decisions resulting in the alleged unconstitutional conditions." *Id.* (cleaned up).

Here, plaintiff sues Glass for retaliation for exercising First Amendment rights (Count II), inadequate medical care (Count III), cruel and unusual punishment (Count IV), failure to train (Count V), failure to supervise (Count VI), and failure to protect (Count VII). Yet nowhere does plaintiff plausibly allege any facts demonstrating that Glass was personally involved in the deprivation of his rights. In the first amendment retaliation claim (Count II), plaintiff names Glass as a defendant but he fails to allege anything Glass did to retaliate against him. Instead, the allegations describe actions Moss took to retaliate against him. As for the deliberate indifference claim stated against Glass in Count III, plaintiff includes the conclusory allegations that Glass "was aware" of his serious medical needs and acted with

16

deliberate indifference because he failed to send plaintiff to the emergency room after he was attacked and he failed to properly care for his wounds after he was released from the hospital and returned to the Workhouse. ECF 2 at 114-15. But these conclusory allegations are insufficient on their face to adequately allege Glass's personal involvement in the events at issue because plaintiff does not allege that Glass was present at the Workhouse when he was assaulted or upon his return, or that he authorized or directed the alleged deprivation of plaintiff's rights.

Counts IV (the cruel and unusual punishment claim) and VII (failure to protect) fare no better. Plaintiff merely refers in conclusory fashion that Glass was "made aware" that inmates were at risk of injury and that he was deliberately indifferent to the risk of harm to plaintiff. Again, however, the complaint fails to allege any facts that would support Glass's direct involvement. Plaintiff does not allege, for example, that he personally informed Glass of the threat of assault made against him, that Glass witnessed inmates threatening him with fan blades but did nothing, or that he ordered plaintiff's placement in Dorm 8.

In another case naming Glass as a defendant, the Eighth Circuit has recently reiterated that "Section 1983 liability is personal." *Jones v. City of St. Lo*uis, Case No. 4:21CV137 RHH, 2024 WL 3019091, at *4 (8th Cir. June 17, 2024) (cleaned up). In *Jones*, the Eighth Circuit concluded that the plaintiff failed to state a claim against Glass for his prolonged detention despite allegations that Glass "knew or

17

should have known" that the plaintiff was incarcerated after the charges against him were dismissed.  Id. at *4-*5.  The Court concluded that the allegations of Glass's knowledge were "nothing more than unsupported naked assertions devoid of further factual enhancements" as there were no "specific facts" alleging Glass's "personal involvement in, or direct responsibility for, a deprivation of his constitutional rights." Id. at *4 (cleaned up).

Plaintiff's conclusory allegations against Glass in this case are no more specific than those found in lacking in Jones.  That Glass is a high-level supervisory official does not absolve plaintiff of the need to "plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Jones, 2024 WL 3019091 at *5.  Accordingly, Counts II through IV and Count VII must be dismissed as to Glass for failure to state claims.  See id. at *4-*5.

As for the failures to train and supervise claims against Glass in Counts V and VI, "when a supervising official who had no direct participation in an alleged constitutional violation is sued for failure to train or supervise the offending actor, the supervisor is entitled to qualified immunity[7] unless plaintiff proves that the

---

[7] "The doctrine of qualified immunity shields officials from civil liability so long as their conduct does not violate clearly established constitutional rights of which a reasonable person would have known" Hernandez v. Mesa, 582 U.S. 548, 554 (2017) (cleaned up).  To determine whether a defendant is entitled to qualified immunity, the Court must "conduct a two- step inquiry: (1) whether the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) whether the right was clearly established at the time of

18

supervisor (1) received notice of a pattern of unconstitutional acts committed by a subordinate, and (2) was deliberately indifferent to or authorized those acts." *Davis v. Buchanan Cnty., Mo.*, 11 F.4th 604, 624 (8th Cir. 2021) (cleaned up).

"This rigorous standard requires proof that the supervisor had notice of a pattern of conduct by the subordinate that violated a clearly established constitutional right." *Davis*, 11 F.4th at 624. (cleaned up). "Notice is the touchstone of deliberate indifference." *Atkinson v. City of Mtn. View, Mo.*, 709 F.3d 1201, 1216 (8th Cir. 2013) (cleaned up). "Allegations of generalized notice are insufficient." *S.M. v. Krigbaum,* 808 F.3d 335, 340 (8th Cir. 2015). "To impose supervisory liability, other misconduct must be very similar to the conduct giving rise to liability." *Id.* (cleaned up). In other words, the supervisor must have "notice of a pattern of conduct that was sufficiently egregious in nature." *Id.* A "single incident cannot serve as notice for a pattern of misconduct." *Brewington v. Keener*, 902 F.3d 796, 803 (8th Cir. 2018). A "number of individual and isolated incidences of medical malpractice or negligence do not amount to deliberate indifference without some specific threat of harm from a related system wide deficiency." *Dulany v. Carnahan*, 132 F.3d 1234, 1245 (8th Cir. 1997) (cleaned up). A supervisor's "mere negligence in failing to detect and prevent a

---

the deprivation." *Solomon v. Petray*, 795 F.3d 777, 786 (8th Cir. 2015) (cleaned up).

subordinate's conduct is not enough for liability under Section 1983." *Ripson v. Alles*, 21 F.3d 805, 809 (8th Cir. 1994) (cleaned up).   "The supervisor must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what he might see." *Id.* (cleaned up).

Here, plaintiff's barebones allegations fail to meet the "rigorous standard" of proof that Glass "had notice of a pattern of conduct by [Moss and/or Woods] that violated a clearly established constitutional right." *Davis,* 11 F.4th at 624. Generalized allegations that the Workhouse's "training policies were not adequate" or "upon information and belief" that Glass "was personally aware" his subordinates were engaged in unspecified "aforementioned acts" and provided inadequate supervision,  ECF 2 at 121-23, do not satisfy this burden.  Plaintiff alleges no specific facts demonstrating Glass's alleged awareness of Moss's or Woods's actions.  *See Jackson v. Nixon*, 747 F.3d 537, 545 (8th Cir. 2014) (plaintiff failed to state a claim where he alleged the warden "knew or should have known" of the alleged constitutional violation).  Further, as explained above plaintiff fails to allege facts sufficient to show that Glass was directly responsible for any specific policy which was inadequate as to training and supervision, and that led to the deprivation of Plaintiff's rights.

Because plaintiff's allegations fail to rise to the level necessary to impose §
1983 supervisory liability, Glass is entitled to qualified immunity on Counts V and
VI of the complaint and is entitled to dismissal of the claims asserted against him.

Individual Capacity Claims Against Defendant Moss (Counts II and IV)

Plaintiff brings claims against Moss for retaliation for exercising First
Amendment rights (Count II) and cruel and unusual punishment (Count IV).
Moss claims that she is entitled to qualified immunity because plaintiff has not
pleaded that she violated any of his clearly established rights.  Specifically, Moss
contends that she simply granted plaintiff's request for relocation after he requested
to be relocated because he feared for his safety.

"[T]he First Amendment prohibits government officials from subjecting an
individual to retaliatory actions" for engaging in protected speech.  *Hartman v.
Moore*, 547 U.S. 250, 256 (2006); *see also Nieves v. Bartlett*, 139 S. Ct. 1715,
1722 (2019).  "To prevail on a § 1983 claim for retaliation in violation of the First
Amendment, plaintiff must demonstrate (1) that he engaged in a protected activity;
(2) that the government official took adverse action against him that would chill a
person of ordinary firmness from continuing in the activity; and (3) that the adverse
action was motivated at least in part by the exercise of the protected activity."
*Santiago v. Blair*, 707 F.3d 984, 991 (8th Cir. 2013) (cleaned up).

Here Moss does not contest that plaintiff was engaged in protected First

21

Amendment activity when he reported threats by other inmates and requested to be relocated for safety reasons.  Accordingly, the Court assumes for purposes of this motion that plaintiff has adequately alleged that his speech was protected by the First Amendment.

Plaintiff has also adequately alleged the remaining two elements of a retaliation claim.  Plaintiff alleges that when he requested a transfer, Moss responded by immediately issuing him a false conduct violation and placing him in administrative segregation to retaliate against him for reporting the threats.  Thus, taking plaintiff's allegations as true, Moss did not (as she argues) "simply" reassign plaintiff as he requested.  Instead, plaintiff has plausibly alleged that his protected speech was the but-for cause of the false conduct violation and subsequent assignment to administrative segregation, which occurred immediately thereafter by the same guard to whom he made the complaint.  *See Santiago*, 707 F.3d at 994.  As such, Moss is not entitled to qualified immunity on this claim: "Multiple cases, including *Santiago*, would have placed her on notice that responding to constitutionally protected activities with a retaliatory housing assignment violated the First Amendment."  *Beard v. Falkenrath*, 97 F.4th 1109, 1120 (8th Cir. 2024) (cleaned up).  And while "it is true that prison administrators may ordinarily transfer a prisoner for whatever reason or for no reason at all, the key word is *ordinarily*: a transfer cannot be in retaliation for the inmate's exercise

of a constitutional right." *Id.* (cleaned up).  As in *Beard*, "it follows here that there can be no qualified immunity if retaliation, rather than some other legitimate justification, was the reason for plaintiff's assignment to administrative segregation." *Id.* (cleaned up).  Moss's motion to dismiss Count II of the complaint is denied.

In Count IV, plaintiff alleges that as a pretrial detainee he was subjected to cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments.  As to defendant Moss, plaintiff alleges only that: she was "made aware" through "grievances, written complaints, media accounts, and other public reports" that inmates at the Workhouse were at risk of injury; Moss was deliberately indifferent to the pervasive risk of harm to plaintiff; Moss acted with deliberate indifference by failing to protect plaintiff; and, as a result, plaintiff was attacked.  ECF 2 at 119-120.

Plaintiff's claim that Moss was deliberately indifferent to his safety, or failed to protect him, arises under the Fourteenth Amendment's Due Process Clause. *See Johnson v. Leonard,* 929 F.3d 569, 575 (8th Cir. 2019) (citing *Hartsfield v. Colburn*, 371 F.3d 454, 457 (8th Cir. 2004)).  "Due process protects pretrial detainees both from deliberate exposure to violence and from failure to protect when prison officials learn of a strong likelihood that a prisoner will be assaulted." *Wilkins v. Davis*, 963 F.2d 377, 1992 WL 107873, at *1 (8th Cir. 1992) (cleaned

23

up).

To establish an unconstitutional failure to protect, a plaintiff must demonstrate (1) that he was incarcerated under conditions posing a substantial risk of serious harm, and (2) that the defendant was "deliberately indifferent to the substantial risk of serious harm." *Chavero-Linares v. Smith*, 782 F.3d 1038, 1041 (8th Cir. 2015) (cleaned up). To establish the second element, plaintiff must allege that Moss was "aware of facts from which the inference could be drawn that a substantial risk of serious harm existed" and that she drew such an inference. *Id.* (cleaned up).

The facts as pleaded against Moss do not plausibly allege that she failed to protect plaintiff from serious injury. Plaintiff alleges that he told Moss some younger inmates in his dorm were threatening him because he was "older" and so he requested a transfer. Moss responded by providing him a transfer (albeit a retaliatory one) to administrative segregation. But plaintiff does not allege that he was threatened or feared for his safety in administrative segregation. There are no allegations that Moss was on duty when plaintiff was attacked, and plaintiff was not attacked by the inmates he complained about to Moss. Instead, plaintiff was attacked by a different group of inmates after he was assigned to Dorm 8. Plaintiff does not allege that Moss assigned him to Dorm 8 or that she even knew he was assigned to Dorm 8. Finally, plaintiff does not allege that the assaulting inmates

were "younger" or that they attacked him because he was "older."  Under the facts as alleged, the complaint fails to plausibly allege that Moss failed to protect him in violation of his clearly established rights under the Fourteenth Amendment.[8]

Moss is therefore entitled to qualified immunity on Count IV of the complaint.

<u>Individual Capacity Claims Against Defendant Woods  (Counts VII and VIII)</u>

Finally, plaintiff brings claims against Woods for failing to protect him from attack and to intervene in the assault.  It is clearly established that correctional officials have a duty to protect pretrial detainees from violence at the hands of other prisoners.  *See Holden v. Hirner*, 663 F.3d 336, 340–41 (8th Cir. 2011); *Curry v. Crist*, 226 F.3d 974, 977 (8th Cir. 2000).  As stated above, under the Due Process Clause, custodians of a pretrial detainee have a duty to take reasonable steps to protect the detainee from assault by other detainees.  *Schoelch v. Mitchell*, 625 F.3d 1041, 1046 (8th Cir. 2010).  "A jail official violates the Due Process Clause when he is deliberately indifferent to a substantial risk of serious harm to a pre-trial detainee and fails to protect the detainee."  *Glaze v. Byrd*, 721 F.3d 528, 531 (8th Cir. 2013) (cleaned up).

---

[8] While plaintiff's status as a pretrial detainee shields him from punishment, *Walton*, 752 F.3d at 1117, plaintiff does not plead that his assignment to administrative segregation by Moss constituted punishment in violation of his Fourteenth Amendment rights.  The Court cannot rewrite plaintiff's complaint to bring claims he elected not to pursue.

To prove a constitutional violation, plaintiff must "satisfy two requirements, one objective and one subjective. The first requirement tests whether, viewed objectively, the deprivation of rights was sufficiently serious. The second requirement is subjective and requires that the inmate prove that the prison officials had a sufficiently culpable state of mind." *Irving v. Dormire*, 519 F.3d 441, 446 (8th Cir. 2008) (cleaned up). A prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Vandevender*, 970 F.3d at 975-76 (cleaned up). As prisons are inherently dangerous environments, "it is not every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Id.* at 976 (cleaned up). If a plaintiff fails "to plausibly allege a substantial risk of serious harm," then the "complaint fails to state a claim." *Id.*

Here, plaintiff pleads in conclusory fashion that Woods knew of but disregarded a substantial risk of harm to plaintiff. This allegation is insufficient to plausibly allege a failure to protect claim against Woods, as there are no specific factual allegations that Woods knew that plaintiff had previously been threatened, that he was recently in administrative segregation, or that he informed Woods that he feared for his safety in Dorm 8 (or elsewhere) prior to the attack. In fact, plaintiff alleges the opposite – that he intentionally chose not to tell any correctional officers

26

of the threat of attack because he did not wish to be placed back in administrative segregation.  Like the insufficient allegations against Glass, these conclusory allegations of Woods's knowledge are "nothing more than unsupported naked assertions devoid of further factual enhancements" as there are no "specific facts" alleging Woods's "personal involvement in, or direct responsibility for, a deprivation of his constitutional rights." *Jones*, 2024 WL 3019091, at *4.  Under these circumstances, Woods is entitled to qualified immunity on Count VII of the complaint.  *See Prosser v. Ross*, 70 F.3d 1005, 1007 (8th Cir. 1995).

The same cannot be said with respect to the failure to intervene claim, however.  Plaintiff alleges that Woods observed the attack, did nothing to intervene, and only called for assistance from other officers once the attack was over.  Plaintiff alleges that he heard Woods place the call.

While "prison officials have no duty as a matter of law to physically intervene in a prison fight which may cause them serious injury or worsen the situation," *Arnold v. Jones*, 891 F.2d 1370, 1372 (8th Cir. 1989), nor are they required to intervene in violent fights between inmates when the inmates outnumber guards, *Prosser*, 70 F.3d at 1008, the Eighth Circuit has denied qualified immunity to a correctional officer who witnessed an attack but failed to timely seek assistance from other officers.  *Cohrs v. Norris*, 210 F.3d 378, 2000 WL 433986, at *2 (8th Cir. 2000).  In *Cohrs*, plaintiff alleged that the defendant correctional officer could see

27

the attack from the control room but did nothing for 20-25 minutes. *Id.* The Eighth Circuit concluded that "although prison guards have no constitutional duty to intervene in an armed assault of one inmate upon another when intervention would place the guards in physical danger or when the inmates outnumber the guards, we believe a genuine issue of material facts exists as to whether the guard was deliberately indifferent for failing to seek help from other parts of the prison." *Id.*

Given plaintiff's allegation that he heard Woods call for assistance only after the attack was over, the Court concludes that plaintiff has adequately pled a violation of his clearly established constitutional rights and that qualified immunity is not established on the face of the complaint.   Woods's motion to dismiss Count VIII of the complaint is denied.

## Conclusion

Given my discussion with counsel on June 6, 2024, regarding the defendants' motion to amend the case management order, the Court urges the parties to continue attempts to resolve this case, including seeking assistance from their previously designated mediator if they believe that would be helpful.

For all the foregoing reasons,

   **IT IS HEREBY ORDERED** that the City of St. Louis's motion for judgment on the pleadings [61] is granted, and plaintiff's claims against the defendant City of St. Louis are dismissed.

**IT IS FURTHER ORDERED** that the motion for judgment on the pleadings filed by defendants Glass, Moss, and Woods [65] is granted as to defendant Glass, granted as to the official capacity claims brought against defendants Moss and Woods, and as to the individual capacity claims brought against defendants Moss and Woods, the motion is granted on Counts I and  IV but denied on Count II as to Moss, and granted on Counts I and VII but denied on Count VIII as to defendant Woods.  Only Count II against Moss in her individual capacity and Count VIII against Woods in her individual capacity remain pending.


_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE


Dated this 25th day of June, 2024.