UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| FREDERICK Q. HACKNEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:22 CV 410 CDP |
| ) | |
| CITY OF ST. LOUIS, et al., ) | |
| ) | |
| Defendants. ) | |

## **MEMORANDUM AND ORDER**

Plaintiff Frederick Hackney was a pretrial detainee at the now-shuttered St. Louis Medium Security Institution (known colloquially as the Workhouse) when he requested transfer to a different housing unit because he had been threatened by other inmates. Because plaintiff refused to identify the inmates who had threatened him, Correctional Officer Samella Moss believed that he was not being truthful and instead simply wanted a different housing assignment. She wrote him up for making a false statement and moved him to administrative segregation. A disciplinary hearing ultimately concluded that he truly feared for his safety and found him not guilty. When he was released from administrative segregation, he was assigned to a different housing unit and attacked by inmates from that unit.

In this case brought under 42 U.S.C. § 1983, plaintiff claims that Moss retaliated against him for exercising his First Amendment right to report that he was

being threatened and to ask to be moved.  Because there is no evidence that Moss's actions were retaliatory, I will grant her motion for summary judgment.[1]

## Standards Governing Summary Judgment

Summary judgment must be granted when the pleadings and proffer of evidence demonstrate that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a), (c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Torgerson v. City of Rochester,* 643 F.3d 1031, 1042 (8th Cir. 2011).  I must view the evidence in the light most favorable to the nonmoving party and accord him the benefit of all reasonable inferences.  *Scott v. Harris,* 550 U.S. 372, 379 (2007).  My function is not to weigh the evidence but to determine whether there is a genuine issue for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The moving party bears the burden of informing the Court of the basis of its motion and demonstrating the absence of an issue for trial.  *Celotex Corp.*, 477 U.S. at 323.  Once a motion is properly made and supported, the nonmoving party must either proffer evidence in the record that demonstrates a genuine issue of material fact or show that the moving party's proffer does not establish the absence of a genuine dispute.  Fed.

---

[1] Most of plaintiff's other claims were dismissed by the Court.  ECF 23, 94.  Defendant Angelica Woods also sought summary judgment, because undisputed evidence showed that she had not worked at the Workhouse for two years when the events at issue occurred.  In response plaintiff seeks to dismiss the claim against her, and this Order grants that request.

R. Civ. P. 56(c)(1); *Anderson*, 477 U.S. at 248; *Conseco Life Ins. Co. v. Williams,* 620 F.3d 902, 910 (8th Cir. 2010); *Howard v. Columbia Pub. Sch. Dist.,* 363 F.3d 797, 800-01 (8th Cir. 2004). The substantive law determines which facts are critical and which are irrelevant. *Anderson*, 477 U.S. at 248. Only disputes over facts that might affect the outcome will properly preclude summary judgment. *Id.*

In determining a motion for summary judgment, I consider only those facts that can be supported by admissible evidence. Fed. R. Civ. P. 56(c). Testimony that would not be admissible is ignored. *Shaver v. Independent Stave Co.*, 350 F.3d 716, 723 (8th Cir. 2003). For this reason, speculation, personal opinion, and legal conclusions are not "facts" upon which a party may rely for summary judgment purposes. *See Benford v. Grisham*, Case No. 1:18CV5 JMB, 2020 WL 569871, at *1 (E.D. Mo. Feb. 20, 2020).

"The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Anderson*, 477 U.S. at 252; *Davidson & Associates v. Jung*, 422 F.3d 630, 638 (8th Cir. 2005). "Simply referencing the complaint, or alleging that a fact is otherwise, is insufficient to show there is a genuine issue for trial." *Kountze ex rel. Hitchcock Foundation v. Gaines*, 536 F.3d 813, 818 (8th Cir. 2008). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary

3

judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Under these standards I review the undisputed facts relevant to the sole claim remaining in this case.

### Undisputed, Material Facts

In February 2017, plaintiff was being held at the Workhouse pending trial on charges of unlawful possession of a firearm, resisting arrest, unlawful possession of a controlled substance, unlawful possession of a weapon, and contempt of court. Inmates at the Workhouse were housed dormitory style. Plaintiff reported to Moss that he "needed to get up out of G dorm" because he did not feel safe. He told her he was being threatened and requested a transfer to another dorm.

In his deposition plaintiff testified that, in response to his request, Moss asked him to identify the inmates who threatened him. ECF 97-2 at 8 ("And I think she was basically trying to get me, like, tell on somebody or something like."). Plaintiff refused to do so. *Id.* at 8-9 ("That's usually how it go, you've got to tell on somebody, and I didn't tell on nobody."). Plaintiff testified that in response Moss told him, "All right, if I move you up out of here, I'm taking you to the hole." *Id.* at 9. Plaintiff testified that Moss transferred him to administrative segregation because "she really didn't believe me. She thought I was lying. She thought I just wanted to get moved up out of there just to be moving." *Id.*

Moss wrote up plaintiff for making a false statement, and plaintiff was

transferred to administrative segregation. Plaintiff remained in administrative segregation for six days awaiting his disciplinary hearing. On March 2, 2017, a disciplinary hearing was held on the charge of plaintiff making a false statement. Plaintiff was found not guilty because "he feared for his safety." ECF 97-1 at 3. Plaintiff was subsequently transferred out of administrative segregation and assigned to Dorm 8, where he was attacked by a different group of inmates from that dorm.[2]

Plaintiff took Moss's deposition on July 22, 2024. The transcript appears in the record as ECF 97-10. It is seventeen pages long. Moss was asked if she remembered plaintiff asking her to move him to a different housing unit in February of 2017. ECF 97-10 at 4. She did not. *Id.* After review of the Workhouse's records, Moss acknowledged that she made an entry on February 25, 2017, that plaintiff was "placed in housing unit." *Id.* Although Moss did not recall writing up plaintiff for making a false statement and placing him in administrative segregation, she again acknowledged that the records reflected that she did so. *Id.* at 5.[3] Moss did not refuse to answer any questions posed to her, and defense counsel did not object to any questions asked of her. The deposition lasted twenty minutes. *See id.* at 1, 5 (indicating that the deposition commenced at 1:00 p.m. and was concluded at 1:20

---

[2] Those inmates were Freeman Whitfield, "Trap" Whittaker, and "T-West." ECF 2 at 10. They were not the same inmates who threatened plaintiff in G Dorm. ECF 97-2 at 9, 11.

[3] Moss noted that "inmate Hackney was placed in the HU (administrative segregation) for refusing to identify person who he claims to be into it with." ECF 97-11 at 1.

5

p.m.).

After her deposition, in support of her summary judgment motion Moss submitted a declaration which appears in the record as ECF 97-3. Moss avers in relevant part as follows:

> 5. It was common that detainees complained of being threatened.
>
> 6. Whenever a detainee would report to me that they were being threatened, it was my practice to remove them to a processing area, away from other detainees.
>
> 7. Once the detainee was removed, I would ask him to identify the person(s) who threatened him.
>
> 8. If the detainee did not know the name of the person(s) who threatened him, I would provide him with a book of pictures of each MSI detainee so that he could identify by photo who threatened him.
>
> 9. In my experience with hundreds of detainees, if a detainee genuinely feared for his safety, he would identify who threatened him.
>
> 10. In my experience with hundreds of detainees, if a detainee did not identify who threatened him, he was lying about being threatened.
>
> 11. If the detainee did not identify who threatened him, I would write up the detainee for making a false statement.
>
> 12. It is against [Workhouse] rules for a detainee to make a false statement.
>
> 13. When a detainee reported that he was threatened, but he did not identify who threatened him, the detainee would be placed in administrative segregation.
>
> 14. Detainees were often moved to administrative segregation as a security measure.
>
> 15. When a detainee reported that he was threatened, and he did identify who

threatened him, we would place the person(s) who threatened the detainee in administrative segregation.

ECF 97-3.

Plaintiff brings one claim of First Amendment retaliation against Moss.

## **Discussion**

In Count II of his complaint, plaintiff alleges Moss retaliated against him for exercising his First Amendment right to report that he was being threatened by other inmates and to request a transfer. ECF 2. Moss claims that she is entitled to qualified immunity because plaintiff's rights were not clearly established and she did not retaliate against plaintiff for exercising his First Amendment rights.

"The doctrine of qualified immunity shields officials from civil liability so long as their conduct does not violate clearly established constitutional rights of which a reasonable person would have known." *Hernandez v. Mesa*, 582 U.S. 548, 554 (2017) (cleaned up). To determine whether a defendant is entitled to qualified immunity, the Court must "conduct a two-step inquiry: (1) whether the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) whether the right was clearly established at the time of the deprivation." *Solomon v. Petray*, 795 F.3d 777, 786 (8th Cir. 2015) (cleaned up). The Court has discretion to choose which of the two elements to address first. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). "Put simply, qualified immunity protects all but the plainly incompetent or those who

7

knowingly violate the law." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015).

"[T]he First Amendment prohibits government officials from subjecting an individual to retaliatory actions" for engaging in protected speech. *Hartman v. Moore*, 547 U.S. 250, 256 (2006); *see also Nieves v. Bartlett*, 587 U.S. 391, 398 (2019). To prevail on his § 1983 claim for retaliation in violation of the First Amendment, plaintiff must demonstrate that (1) he engaged in a protected activity; (2) Moss took adverse action against him that would chill a person of ordinary firmness from continuing in the activity; and (3) Moss "would not have taken the adverse action but for harboring retaliatory animus against the plaintiff because of the exercise of his First Amendment rights." *Aldridge v. City of St. Louis, Missouri*, 75 F.4th 895, 899 (8th Cir. 2023) (cleaned up).[4]

Moss is entitled to qualified immunity as a matter of law because plaintiff cannot demonstrate that Moss would not have written him up and transferred him[5] to administrative segregation but for harboring retaliatory animus against him for

---

[4] Despite the "but-for" causation standard announced in *Nieves* and applied in *Aldridge*, the Eighth Circuit Court of Appeals recently cited *Santiago v. Blair*, 707 F.3d 984, 991 (8th Cir. 2013), for the proposition that a plaintiff alleging a § 1983 First Amendment retaliation claim must show that the adverse action was "motivated at least in part by the exercise of the protected activity." *Lamar v. Payne*, 111 F.4th 902, 907 (8th Cir. 2024). Given the complete absence of any evidence of retaliatory motive in this case, however, plaintiff fails to satisfy either causation standard.

[5] Here, plaintiff was immediately transferred to administrative segregation because he was written up, so the write up and transfer are considered together. However, even if considered separately, plaintiff still cannot show that Moss took either action based on retaliatory animus.

exercising protected First Amendment rights.[6] "To prevail on such a claim, a plaintiff must establish a 'causal connection' between the government defendant's 'retaliatory animus' and the plaintiff's 'subsequent injury.'" *Nieves*, 587 U.S. at 398 (quoting *Hartman*, 547 U.S. at 259). However, "if the response was driven not by animus but by the defendant's understanding—however mistaken—of her official duties, then it was not retaliatory." *Aldridge*, 75 F.4th at 899 (cleaned up). "To avoid summary judgment, plaintiff must submit affirmative evidence of a retaliatory motive." *Lewis v. Jacks*, 486 F.3d 1025, 1029 (8th Cir. 2007) (cleaned up). Summary judgment remains appropriate even when motive is at issue if the plaintiff fails to "identify affirmative evidence from which a jury could find that the plaintiff has carried his or her burden of proving the pertinent motive." *Crawford-El v. Britton*, 523 U.S. 574, 600 (1988).

Here, plaintiff's own testimony disproves retaliatory motive. Plaintiff testified that Moss wrote him up and transferred him to administrative segregation not because he made a complaint, but because she thought he was lying about

---

[6] Because plaintiff cannot demonstrate retaliatory motive, the Court need not and therefore does not decide whether plaintiff's speech constituted protected First Amendment activity. Contrary to plaintiff's assertion in opposition to summary judgment, the Court did not decide this issue in his favor when ruling on defendants' motion for judgment on the pleadings. Instead, the Court assumed without deciding "for purposes of this motion that plaintiff has adequately alleged that his speech was protected by the First Amendment." ECF 94 at 22. And because Moss has qualified immunity under the first prong of the analysis, the Court need not and therefore does not decide whether plaintiff's alleged First Amendment rights were clearly established at the time of the incident.

being threatened. His testimony is consistent with the conduct violation Moss issued to plaintiff for making a false statement, and with Moss's declaration that in her experience, if a detainee refuses to identify who was threatening him, then he is lying about being threatened. In such a case, it is her custom and practice to write the detainee up for making a false statement and place him in administrative segregation.[7]

To evade summary judgment and establish a jury question on the issue of retaliatory motive, plaintiff makes three arguments. First, he urges the Court to disregard Moss's declaration as a "conclusory, self-serving affidavit" that contradicts her prior testimony, citing *Smith v. Golden China of Red Wing, Inc.*, 987 F.3d 1205, 1209 (8th Cir. 2021). ECF 100 at 9. Yet a comparison of Moss's deposition testimony and her declaration reveals no such inconsistencies, much less contradictions. Moss was questioned by defense counsel solely about her recollections of plaintiff. She had none, but she acknowledged that Workhouse records showed that she issued a conduct violation to plaintiff for lying and transferred him to administrative segregation. She did not refuse to answer any questions posed by counsel, who chose to conclude the deposition after twenty

---

[7] Although not argued by the parties, Workhouse records demonstrate that at least one other inmate was also "placed in Hu3 for failure to identify (after being "taken out of A/O for fear of safety"), he continue to say that if he were to tell that they will get him later on." ECF 97-11 at 11. Moss did not make this entry, which suggests that she was not the only correctional officer to follow this practice when inmates refused to identify who threatened them. *See id.* (entry made by #whims1, not Moss's electronic signature of #moss01).

minutes.

Moss was never asked about her custom and practice with respect to detainees reporting threats and/or her considerable experience with detainees who request a transfer because of threats but refuse to identify who threatened them, which are the only topics of her declaration. Although plaintiff complains that Moss should have submitted her declaration in advance of her deposition so that she could be questioned about it, no such requirement exists in the case management order or the Federal Rules of Civil Procedure. Moss submitted her declaration in support of her summary judgment motion, which was timely filed after the deposition took place. If counsel wanted to question Moss about how she typically responds when a detainee reports being threatened and requests a transfer, he could have done so. That he chose not to does not render Moss's affidavit inadmissible. Moss's habit evidence is admissible under Fed. R. Civ. P. 406 and may properly be considered on summary judgment "as providing an inference that a routine practice was actually carried out." *Doe by next Friend Rothert v. Chapman*, 30 F.4th 776, 770 (8th Cir. 2022), *vacated on other grounds*, 143 S. Ct. 857 (2023); *see Howard v. City of Durham*, 68 F.4th 934, 951 (4th Cir. 2023) (citing *Chapman* with approval).

In this case, the declaration is not inconsistent with Moss's prior testimony and is, in fact, consistent with plaintiff's own testimony that Moss thought he was

11

lying about being threatened because he refused to identify the inmates who were threatening him. The declaration is relevant evidence that Moss's motive for writing up and transferring plaintiff to administrative segregation was as plaintiff stated (namely, that she thought he was lying about being threatened) and not to retaliate against him for his speech.

Second, plaintiff argues that summary judgment is not appropriate because he was ultimately found not guilty of making a false statement at his disciplinary hearing. Plaintiff contends that "the objective falsity" of his placement in administrative segregation "speaks volumes to Moss's true, retaliatory motivations." ECF 100 at 12. That plaintiff was ultimately found not guilty of making a false statement, however, does not create a genuine issue of fact as to Moss's motive, as the mere filing of even a false disciplinary charge is not actionable under § 1983 in the absence of retaliatory motive. *See Sprouse v. Babcock*, 870 F.2d 450, 452 (8th Cir. 1989). Here, the only evidence is that Moss actually believed that plaintiff was lying when she issued the conduct violation and transferred him to administrative segregation. At best, then, it demonstrates that Moss's response was driven by her understanding, "however mistaken," that plaintiff was lying and should therefore be written up and placed in administrative segregation. *Aldridge*, 75 F.4th at 899. As such, it "was not retaliatory." *Id.*

Third, plaintiff argues that summary judgment should be denied because

Moss failed to comply with the Workhouse's grievance policy by writing him up for lying and placing him in administrative segregation after he reported a threat but refused to identify who was threatening him. Even if true, Moss's mere failure to follow the Workhouse's internal policies does not establish liability on a § 1983 claim. *See Vandeventer v. Sass*, 970 F.3d 972, 977-78 (8th Cir. 2020).

The only evidence in the record demonstrates that Moss wrote up plaintiff and transferred him to administrative segregation because she thought he was lying about being threatened. According to plaintiff's own admission, Moss thought that because he refused to identify who threatened him. That plaintiff was ultimately found to be telling the truth about his fear does not create a triable issue on Moss's non-retaliatory motive. Her mistaken belief that plaintiff's speech was false does not demonstrate retaliatory animus under the undisputed facts of this case. As such, Moss is entitled to qualified immunity on plaintiff's retaliation claim.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's request to dismiss his claim against defendant Angelica Woods is granted, plaintiff's claim against defendant Woods is dismissed with prejudice, and defendant Woods's motion for summary judgment [95-2] is denied as moot.

**IT IS FURTHER ORDERED** that the motion for summary judgment filed by defendant Samella Moss [95-1] is granted, and plaintiff's claim against

defendant Moss is dismissed with prejudice.

A separate Judgment is entered this same date.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 18th day of September, 2024.